**Affirmed and Memorandum Opinion filed August 28, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00224-CV

### AMY W. STARKEY AND MICHAEL J. STARKEY, Appellant

### V.

### BARKAN RONEN ENRI OR IN THE ALTERNATIVE YITSHAK EINI D/B/A SUPER DEAL AUTO SALES, Appellee

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2016-18674**

## M E M O R A N D U M   O P I N I O N

After several heavy rainfalls, homeowners Amy W. Starkey and Michael J. Starkey (appellants or the Starkeys) sued Barkan Ronen Enri or in the alternative Yitshak Eini d/b/a Super Deal Auto Sales (appellee or Super Deal), alleging that Super Deal's construction of concrete driveway caused flooding to their home. The trial court granted Super Deal's no-evidence and traditional motion for summary judgment on the Starkey's claims for negligence, negligence *per se*, nuisance,

nuisance *per se*, trespass to real property, trespass to personal property, and tortious interference with property and/or property rights. Because no evidence raises facts to support a finding that Super Deal's driveway caused the Starkey's home to flood, we affirm.

## I. Background

The Starkeys lived in a home located at 6230 Tanager, Houston, Harris County, Texas. The Starkeys' property is south of Super Deal Auto Sales' automobile dealership. The two properties shared a common border separated by a wooden fence.

In 2009, the Starkeys allege Super Deal constructed a driveway and/or a concrete impoundment on its property. According to the Starkeys, Super Deal built the driveway and concrete impoundment without a permit from the City of Houston.

The Starkeys assert that during three separate time periods in May 2015, October 2015, and April 2016, their property sustained flood damage, which was caused by Super Deal's alleged construction of the driveway and concrete impoundment.

On March 23, 2016, the Starkey's sued Super Deal, and in their second amended petition[1] alleged claims for negligence, negligence *per se*, nuisance, nuisance *per se*, trespass to real property, trespass to personal property, and tortious interference with property and/or property rights. Super Deal filed a general denial, special exceptions, and affirmative defenses, including defenses asserting that the Starkeys' claims are barred by the applicable statutes of limitations and the incidents in question are the result of an act of God which is not attributable to Super Deal.

---

[1] In their second amended petition, the Starkeys dropped their claim for a declaratory judgment.

In November 2016, Super Deal filed its traditional and no-evidence motion for summary judgment. After exchanging numerous responses, replies, supplemental briefs, and sur-replies, on March 1, 1997, the trial court granted Super Deal's traditional and no evidence motion for summary judgment. In its order, the trial court dismissed with prejudice the Starkeys' claims and concluded, "[t]his is a final judgment." The next day, the Starkeys filed a motion to modify the judgment, asserting that the court granted two final judgments by granting the tradition and no evidence summary judgment. The trial court denied the Starkeys' motion to modify. The Starkeys also filed a motion for reconsideration, maintaining that Super Deal's affirmative defense of act of God must be tried to a jury and their claims negligence and nuisance claims are not barred by any statute of limitation. The trial court denied the motion for reconsideration, and this appeal timely followed.

## II.    Analysis

The Starkeys raise three issues on appeal: (1) the trial court erred in denying their motion to modify judgment; (2) the trial court erred in granting Super Deal's no-evidence motion for summary judgment; and (3) the trial court erred in granting Super Deal's traditional motion for summary judgment.

### A.    Final judgment.

The Starkeys essentially argue that it is impermissible for a trial court to grant, as here, both a traditional and no-evidence motion for summary judgment without stating the reasons. The Starkeys allege, without any authority, that doing so constitutes more than one final judgment. We disagree.

The Starkeys' argument that the trial court lacked authority to grant both a traditional and no-evidence motion for summary judgment is meritless as there is only one final judgment, which was signed on March 1, 2017. In reviewing such

3

orders, the Texas Supreme Court has opined on which motion (*i.e.*, the no -evidence) should be reviewed first. As the Supreme Court has explained in its affirmance, "[I]f the non-movant fails to produce legally sufficient evidence to meet his burden as to the no-evidence motion, there is no need to analyze whether the movant satisfied its burden under the traditional motion." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

The Starkeys' first issue is overruled.

**B.    Summary judgment.**

**1.    Standard of review**

"When a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion." *First United Pentecostal Church of Beaumont, d/b/a the Anchor of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). "If the non-movant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion as it necessarily fails." *Id.* (citing *Merriman*, 407 S.W.3d at 248). "Thus, we first review each claim under the no-evidence standard." *Id.* Any claims that survive the no-evidence review will then be reviewed under the traditional standard. *Id.* at 219–220.

"To defeat a no-evidence motion, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements." *Parker*, 514 S.W.3d at 220 (citing *Ridgway*, 135 S.W.3d at 600). "A genuine issue of material fact exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (internal quotations omitted)). The evidence does not create an issue of material fact if it is "so weak as to do no more

than create a mere surmise or suspicion" that the fact exists. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014) (quoting *Ridgway*, 135 S.W.3d at 601).

A party moving for traditional summary judgment meets its burden by proving that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

### 2. Applicable law

#### a. Negligence

To establish a claim of negligence, the Starkeys must show: (1) the existence of a duty; (2) a breach of that duty; and (3) damages proximately caused by the breach.

Negligence *per se* is a common-law tort concept in which a statute defines the standard of conduct. *Thomas v. Uzoka*, 290 S.W.3d 437, 444 (Tex. App.–Houston [14th Dist.] 2009, pet. denied). Negligence per se is not a separate claim that exists independently of a common-law negligence claim; rather, negligence *per se* is merely one method of proving a breach of duty, a requisite element of any negligence claim. *See id*. at 445. As explained by the Texas Supreme Court, "[n]egligence *per se* is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person." *Carter v. William Sommerville and Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979). Thus, when claiming negligence *per se*, the plaintiff must show that such negligence was a proximate cause of the injury or damages sustained. *Williams v. Sable*, No. 14–09–00806–CV, 2011 WL 238288, at *3 (Tex. App.–Houston [14th Dist.] Jan. 20, 2011, no pet.) (mem. op.).

In order to establish a claim of gross negligence, the Starkeys must show two elements: (1) viewed objectively from the actor's standpoint, the act or omission

5

complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed[s] in conscious indifference to the rights, safety, or welfare of others. *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (citation and quotation omitted). Under the first, objective element, an extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Id*. (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)). Under the subjective element, "actual awareness means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id*. Circumstantial evidence may suffice to prove either element. *Id*.

### b. Nuisance

A private nuisance is a non-trespassory invasion of another's interest in the private use and enjoyment of land. *Kane v. Cameron Int'l Corp.*, 331 S.W.3d 145, 147 (Tex. App.—Houston [14th Dist.] 2011, no pet.). It may arise by causing (1) physical harm to property, such as by the encroachment of a damaging substance; (2) physical harm to a person on his property from an assault on his senses or by other personal injury; or (3) emotional harm to a person from the deprivation of the enjoyment of his property through fear, apprehension, or loss of peace of mind. *Id*. at 147–48 (citing *Aguilar v. Trujillo*, 162 S.W.3d 839, 850 (Tex. App.—El Paso 2005, pet. denied)). One may also create a private nuisance by using property in a way that causes reasonable fear in those who own, lease, or occupy property nearby. *See, e.g., Comminge v. Stevenson*, 76 Tex. 642, 644, 13 S.W. 556, 557 (1890) (powder magazine within four hundred feet of plaintiff's residence and that caused plaintiff apprehension and alarm was a private nuisance); *McMahan v. City of Abilene*, 261 S.W. 455, 455–56 (Tex. Civ. App.—El Paso 1924, writ dism'd w.o.j.)

6

(leaking earthen dam located upstream from plaintiff's property and that caused plaintiff's family "continual fear . . . for their lives and property" was a private nuisance).

A nuisance *per se* or at law is an act, occupation, or structure which is a nuisance at all times, regardless of location. *See GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 614 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *City of Sundown v. Shewmake*, 691 S.W.2d 57, 59 (Tex. App.—Amarillo 1985, no writ). A "nuisance in fact" is a condition that is a nuisance because of its particular surroundings. *Id*. It is a condition which substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *City of Tyler v. Likes*, 962 S.W.2d 489, 503–04 (Tex. 1997). Actionable nuisance arises in three possible ways: (1) intentional invasion of another's interest; (2) negligent invasion of another's interest; or (3) other conduct that invades another's interest which is culpable because it is abnormal and out of place in its surroundings. *Id*.

**Trespass**[2]

"Trespass to real property occurs when a person enters another's land without consent." *Salazar v. Sanders*, 440 S.W.3d 863, 876 (Tex. App.—El Paso 2013, pet. denied) (citations omitted). To recover damages for trespass to real property, a plaintiff must prove that: (1) the plaintiff owned or had a lawful right to possess real

---

[2] " 'The gist of trespass to personalty is an injury to, or interference with, possession, unlawfully, with or without the exercise of physical force.' " *Mountain States Tel. & Tel. Co. v. Vowell Constr. Co*., 161 Tex. 432, 341 S.W.2d 148, 150 (1960) (quoting 87 C.J.S. Trespass §§ 8, 9). Thus the intentional entry of a scraper into a space lawfully occupied by a cable was held to be a "violation of a property right which gave rise to a cause of action regardless of negligence." *Id*. Because we focus on an element common to all of the Starkeys' claims, we need not determine whether the Starkeys' claim for negligent trespass differs from the type of trespass claim recognized in *Mountain States*. *See Palma v. Chribran Co., LLC*, 327 S.W.3d 866, 868 n.2 (Tex. App.—Beaumont 2010, no pet.).

property; (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary; and (3) the defendant's trespass caused injury to the plaintiff's right of possession. *Id*. (citing *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied)).

"A trespass to personalty is an unlawful injury to, or interference with, possession, with or without the exercise of physical force." *Jamison v. Nat'l Loan Investors, L.P.*, 4 S.W.3d 465, 469 n.2 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (citations omitted). Destruction of, or injury to, personal property, regardless of negligence, may be a trespass. *Id*. A trespass is usually regarded as an intentional tort in the sense that it involves an intent to commit an act that violates a property right, or would be practically certain to have that effect, although the actor may not know that the act he intends to commit is such a violation. *Id*. (citing *Malouf v. Dallas Athletic Country Club*, 837 S.W.2d 674, 676 (Tex. App.—Dallas 1992, writ dism'd w.o.j.).

**Tortious interference with property and/or property rights**

Under the general rule, there are at least two causes of action for tortious interference: (1) tortious interference with the right to dispose of property; and (2) tortious interference with the peaceful use and enjoyment of property rights. *Ski River Development, Inc. v. McCalla*, 167 S.W.3d 121, 140 (Tex. App.—Waco 2005, pet. denied) (citing *Suprise v. DeKock*, 84 S.W.3d 378, 380 (Tex. App.—Corpus Christi 2002, no pet.)). "A cause of action for tortious interference with the right to dispose of property is, in essence, a claim for tortious interference with a prospective contract or prospective business relation." *Id*. "A cause of action for tortious interference with peaceful use and enjoyment of property is, in essence, a claim for intentional invasion of, or interference with, property rights." *Id*.

### 3. No-evidence summary judgment

In this case, the trial court's order granting summary judgment does not specify the basis for the ruling; thus, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *Western Invs.*, 162 S.W.3d at 550.

Super Deal maintains the Starkeys' claims (*i.e.*, negligence, negligence *per se,* nuisance, intentional and negligent trespass, trespass to personalty, and tortious interference with property and/or property rights) all stem from the same allegedly wrongful conduct—the construction of the driveway in 2009. Super Deal argues that an essential element evidence of those claims is causation. Thus, to succeed, the Starkeys must show more than a scintilla of evidence that the acts and/or omissions of Super Deal in constructing the driveway proximately caused their alleged injuries and damages.

The Starkeys maintain "the record shows that Appellants produced more than a scintilla of evidence to raise genuine issues of material fact regarding causation." The Starkeys broadly reference their own declarations and deposition testimony as evidence that Super Deal's driveway caused flooding to occur in the Starkeys' backyard. Amy Starkey's declaration provided that in 2009 she saw construction workers build a driveway and/or concrete impoundment that caused her fence to lean backwards. Michael Starkey's declaration stated that he noticed "problems with the driveway and/or concrete impoundment" and it was "poorly built because it used our fence as a concrete form." Both declarations provided as follows:

> Since Defendants poorly built the driveway and car lot/concrete impoundment, when a rainstorm occurs, our backyard would collect water from the water flowing over the driveway and/or concrete impoundment into our backyard. In May 2015, October 2015, and April 2016, during the heavy rainstorms, our home suffered massive flooding because of the water flowing over the Defendants' driveway and/or concrete impoundment. Water flooded the street in front of our

home, but it did not come in our home from the front. Water flooded our home from the rear directly from the Defendants' driveway and/or concrete impoundment.

Both declarations stated only their home suffered "as a result of Defendants poorly built driveway and/or concrete impoundment."

Super Deal objected to the Starkeys' declarations on several grounds, including that the declarations are conclusory. Super Deal argues that the Starkeys have no admissible evidence to support their claim that Super Deal took some action that proximately caused the diversion of water to the Starkeys' property and its subsequent flood damage. Super Deal further contends that the Starkeys are not experts in the fields of construction, geology, or fluid migration. Super Deal maintains that the Starkeys' declarations simply provide no evidence of causation because they are not qualified to opine on causation.

**Causation**

Proximate cause has two components: (1) "cause in fact" and (2) foreseeability. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995); *Browning–Ferris, Inc. v. Hobson*, 967 S.W.2d 543, 546 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury, *without which the harm would not have occurred*." *Doe*, 907 S.W.2d at 477 (*emphasis added*); *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995). "Foreseeability exists if the actor, as a person of ordinary intelligence, should have anticipated the dangers his negligent act creates for others." *Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 310 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The elements of proximate cause—cause in fact and forseeability—cannot be established by mere conjecture, guess, or speculation. *W. Invs., Inc.*, 162 S.W.3d at 551.

10

The Starkeys did not retain any experts to testify on water flow or construction. The Starkeys allege that their lay opinions (declarations and deposition testimony) constitute evidence of proximate cause, alleging in their brief repeatedly that "(1) Appellants' home is directly behind Appellees' automobile dealership where they negligently built the driveway and concrete impoundment and (2) during the heavy rainstorms in May and October 2015 and April 2016, the poorly build driveway and impoundment caused massive flooding to occur to Appellants' home in the rear, not their neighbors, and cause their home and personal property to be substantially damaged." Whether expert testimony is required is a question of law, which we review *de novo*. *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004). "Expert testimony is required when an issue involves matters beyond jurors' common understanding." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006).

After a review of the summary judgment record in this cause, we have found no evidence showing proximate cause. As an initial matter, the Starkeys' declarations are conclusory, failing to provide underlying facts to support their conclusions. *Padilla v. Metro. Transit Auth. of Harris Cnty.*, 497 S.W.3d 78, 85 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (a conclusory statement is one that expresses a factual inference without providing underlying facts to support that conclusion). There are no underlying facts supporting the Starkeys' conclusion that Super Deal "poorly built" a driveway and/or concrete impoundment. Additionally, there are no underlying fact supporting the Starkeys' conclusion that during heavy rainstorms Super Deal's driveway and/or impoundment "caused" massive flooding in the Starkeys' home. Affidavits that state conclusions without providing underlying facts to support those conclusions are not proper summary judgment evidence. *See id*. at 86. An affidavit must contain specific factual bases, admissible

11

in evidence, from which any conclusions are drawn. *See id*. Because the Starkeys failed to demonstrate proximate cause with evidence containing underlying facts to support their conclusions, the trial court properly granted Super Deal's no-evidence motion for summary judgment on this basis. *See Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994) (conclusory testimony is not competent summary judgment evidence). Although the trial court did not rule on Super Deal's objections and strike the declarations, on appeal we may nonetheless disregard the conclusory declarations because "[a]n objection that an affidavit is conclusory is an objection to the substance of the affidavit and may be raised for the first time on appeal." *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.).

Super Deal's no-evidence motion for summary judgment also contends that the Starkeys have no evidence on the element of causation because the Starkeys failed to designate an expert witness to testify as to this element of their claims. Assuming without deciding that expert testimony was not required to show proximate cause in this case, the lay testimony of the Starkeys fails to suffice because the declarations are conclusory. *See supra*. Because there is no evidence in the record showing the construction of Super Deal's driveway caused the flooding on the Starkeys' property, the trial court properly granted the no-evidence motion for summary judgment.

The Starkey's second issue is overruled.

### 4. Traditional summary judgment

As set forth above, the Starkey's failed to meet their burden under the no-evidence motion. As such, "there is no need to address the challenge to the traditional motion as it necessarily fails." *Parker*, 514 S.W.3d at 219 (citing *Merriman*, 407 S.W.3 at 248).

12

The Starkey's third issue is overruled.

### III.    Conclusion

The order of the trial court is affirmed.


                                        /s/      John Donovan
                                                 Justice


Panel consists of Justices Boyce, Donovan, and Wise.
Do Not Publish—Tex. R. App. P. 47.2(b).