In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00105-CV


______________________________




JAVIER D. CORONA, Appellant



V.



PILGRIM'S PRIDE CORPORATION, Appellee




 


On Appeal from the 276th Judicial District Court


Camp County, Texas


Trial Court No. CV-05-178




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 Pilgrim's Pride Corporation has filed a motion to dismiss this appeal and a request
for sanctions. Javier D. Corona filed pro se a notice of appeal October 27, 2006, from a
summary judgment entered by the trial court October 17, 2006.

 The summary judgment in this case does not constitute a final, appealable order in
that it does not dispose of all claims. See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195
(Tex. 2001). "[A] judgment issued without a conventional trial is final for purposes of
appeal if and only if either it actually disposes of all claims and parties then before the
court, regardless of its language, or it states with unmistakable clarity that it is a final
judgment as to all claims and all parties." Id. at 192-93; Bean v. Reynolds Realty Group,
Inc., 192 S.W.3d 856, 862 (Tex. App.--Texarkana 2006, no pet.). We recognize that a
party may normally appeal only from final orders or judgments. Unless otherwise statutorily
authorized, an appeal may be made only from a final judgment. See Tex. Civ. Prac. &
Rem. Code Ann. § 51.012 (Vernon 1997), § 51.014 (Vernon Supp. 2006); see also
Lehmann, 39 S.W.3d at 195; Hinde v. Hinde, 701 S.W.2d 637, 639 (Tex. 1985). 
Accordingly, we grant the portion of the motion asking us to dismiss this appeal for want
of jurisdiction.

 Pilgrim's Pride also requests sanctions against Corona for bringing this interlocutory
appeal. We are of the opinion that sanctions are not appropriate in this case. The request
for sanctions is denied.

 We dismiss this case for want of jurisdiction.


 Donald R. Ross

 Justice


Date Submitted: December 13, 2006

Date Decided: December 14, 2006



EF="#N_1_"> (1)) filed separate but very similar mixed traditional and no-evidence motions for summary judgment, both of which were granted by the trial court by orders
entered July 29, 2002. (2) Due to their similarity, reference to the motions and the orders which
followed them are sometimes referred to in this opinion in the singular and not the plural. This
appeal was timely brought by Nears, complaining of error in the entry of the two summary judgment
orders.

 The circumstances giving rise to Nears's complaints against HHFI began when she was
working for VI-MTLS, Ltd. ("Holiday Inn") as the guest services manager at its Mount Pleasant,
Texas, Holiday Inn hotel. During Nears's employment, Jack Marshall was made the interim general
manager of the hotel July 26, 1999. Nears alleged that Marshall routinely engaged in violent
outbursts, attacking the honesty, character, and competency of all of the employees of the hotel. 
Nears alleged that Marshall drank excessively, a practice which exacerbated the general environment
of fear and hostility among the hotel employees, and that Marshall directed the worst of his vitriol
toward her. Nears contends that Marshall curtailed her work duties, ransacked her office, and threw
away her files and possessions. Marshall's conduct, according to Nears, was outrageous and
unpredictable, causing Nears to feel threatened and fearful that Marshall would physically harm her. 
Nears claims to have experienced a number of stress-related health problems as a result of Marshall's
conduct toward her. 

 Nears was fired November 5, 1999, and was given no reason for her termination. Nears
claims she was wrongfully terminated as a result of her filing of a worker's compensation claim
(stemming from an on-the-job May 24, 1999, injury).

 In Nears's third amended petition (the live pleading at the entry of the complained-of
summary judgments), she had asserted claims against a number of defendants, including the
following: (a) Marshall, her supervisor, (b) Holiday Inn, (c) ETEX Hotel Management Co., Inc.
(which was hired by Holiday Inn to manage the Mount Pleasant hotel), (d) Dewey Neely and Robert
Brewer (respectively, ETEX's director of operations and president), and (e) HHFI. Nears alleged
intentional infliction of emotional distress by Marshall and claimed that Marshall acted as HHFI's
agent and that HHFI was vicariously liable for Marshall's actions. Nears also claimed that HHFI was
negligent in its alleged duty of supervision of Marshall. 

 Nears alleges that she advised Brewer of Marshall's conduct and asked for his assistance in
dealing with this matter, but her pleas fell on deaf ears because Brewer did nothing to ameliorate the
situation. Nears also contends that she wrote Neely a detailed letter outlining Marshall's conduct;
Neely made no response. 

 On appeal, Nears contends that HHFI is vicariously liable for the actions of ETEX and
Marshall because (based on the theories of actual and apparent authority) they were agents of HHFI. 
Nears further contends that HHFI is vicariously liable for the actions of Marshall and ETEX based
on franchisor/franchisee liability, respondeat superior, and because Marshall and ETEX were
independent contractors for HHFI.

II. ISSUES PRESENTED

 Nears maintains on appeal that the summary judgments were erroneously granted, saying that
there was more than just a scintilla of evidence that HHFI possessed either apparent or actual
authority to act as the agent of ETEX and Marshall and that even if no such apparent or actual
authority existed, HHFI was still vicariously liable for the actions of Marshall and ETEX.

III. STANDARD OF REVIEW

 The motions for summary judgments filed by HHFI rely both on traditional grounds and on
no-evidence grounds. Although the primary thrust of the motions is to reflect that there is no
evidence to support the claims of Nears, there is evidence attached to the motions to rebut her claims. 
The trial court does not specify the grounds upon which the judgments were granted. 

 To succeed in a motion for summary judgment, a movant must establish that there is no
genuine issue of material fact so that the movant is entitled to judgment as a matter of law. W. Invs.,
Inc. v. Urena, 162 S.W.3d 547 (Tex. 2005); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.
1991). When reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. 
Limestone Prods. Distribution, Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). 

 When a trial court's order granting summary judgment does not specify the ground or grounds
relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced
are meritorious. Hill v. Bartlette, 181 S.W.3d 541, 544 (Tex. App.--Texarkana 2005, no pet.)
(citing Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995)). 

 Nevertheless, when a party moves for both a traditional and no-evidence summary judgment,
the trial court's judgment is initially reviewed under the no-evidence standard. E. Hill Marine, Inc.
v. Rinker Boat Co., 229 S.W.3d 813, 816 (Tex. App.--Fort Worth 2007, pet. denied) (citing Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004)). If the nonmovant fails to provide more
than a scintilla of evidence under this standard, there is no need to analyze whether the nonmovant's
proof satisfied the Rule 166a(c) burden. Id.; see Tex. R. Civ. P. 166a(c). 

 Because a no-evidence motion for "summary judgment . . . is essentially a pretrial directed
verdict," (3) a reviewing court applies the same sufficiency standard. Wyatt v. Longoria, 33 S.W.3d
26, 31 (Tex. App.--El Paso 2000, no pet.). In response to a no-evidence motion for summary
judgment, the nonmovant must bring forth more than a scintilla of evidence to raise a genuine issue
of material fact in order to defeat the motion. Forbes, Inc. v. Granada Biosciences, Inc., 124 S.W.3d
167, 172 (Tex. 2003). If the evidence brought forward by the nonmovant does no more than create
mere surmise or suspicion of a fact, less than a scintilla exists. Id. 

IV. ANALYSIS

 In the interest of separating the chaff from the grain, we must first determine the precise
issues before this Court. There is an interesting interplay in Nears's brief on appeal that weaves
arguments relating to the actual authority of Marshall and ETEX to act on HHFI's behalf with the
contention that HHFI is liable on a franchisor/franchisee theory of liability as well. With respect to
these theories of liability, only the actual authority of Marshall and ETEX was raised in Nears's
summary judgment response in the trial court. (4) HHFI also contends that Nears's attempts to raise
the issue of respondeat superior liability, when that theory of liability was not before the trial court
were improper. Going further, HHFI therefore posits that this issue cannot be considered on appeal.
We agree. (5) 

 In the context of a summary judgment, a nonmovant is required to expressly present to the
trial court, by written answer or response, any issues contravening the movant's entitlement to
summary judgment. See Tello v. Bank One, N.A., 218 S.W.3d 109, 118 (Tex. App.--Houston [14th
Dist.] 2007, no pet.) (citing Tex. R. Civ. P. 166a(c)). In order to "expressly present" issues to the
trial court, the written answer or response to the motion for summary judgment must fairly apprise
the movant and the trial court of the issues the nonmovant contends should defeat the motion for
summary judgment. Id. at 119.

 Because Nears did not expressly present the issue of franchisor/franchisee liability to the trial
court in her response to the motions for summary judgment, that issue is not before this Court. 
Because the issues of Marshall's and ETEX's actual and apparent authority to act as the agent of
HHFI were expressly presented to the trial court, those issues are before this Court.

 HHFI also complains of Nears's independent contractor theory of liability asserted for the
first time on appeal. Indeed, because Nears did not raise this theory of liability in her summary
judgment response, it cannot be considered on appeal. (6)

 Finally, on appeal, HHFI urges this Court to affirm the summary judgment because Nears's
intentional infliction of emotional distress claim is barred because it is covered by a statutory remedy
for unlawful retaliation. A motion for summary judgment must stand or fall on the grounds
presented in the motion. Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 912 (Tex. 1997). In
determining whether grounds are expressly presented, reliance may not be placed on briefs or
summary judgment evidence. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex.
1993). Because HHFI did not raise the issue of legal impermissibility of Nears's intentional
infliction of emotional distress claim in its motion for summary judgment, it was never presented
to the trial court. Therefore, we do not consider this argument on appeal. (7) 

 At the end of the day, after the chaff has been cleared and the dust of unpresented complaints
no longer obscures, the issues before the Court are the actual and apparent authority of ETEX and
Marshall to act as agents of HHFI.

 A. HHFI Is Entitled to Summary Judgment as a Matter of Law

 Because the summary judgment evidence presented by HHFI disproves that any actual and/or
apparent authority of ETEX and Marshall to act for HHFI and Nears fails to show that there is
disputed evidence of that allegation, HHFI is entitled to summary judgment as a matter of law.

 1. There is no genuine issue of material fact regarding the apparent
authority of ETEX and Marshall to act as agents of HHFI. 

 

 An agent acting within the scope of apparent authority binds a principal as though the
principal performed the action. Ames v. Great S. Bank, 672 S.W.2d 447, 450 (Tex. 1984). Apparent
authority is based on estoppel arising 

 either from a principal knowingly permitting an agent to hold [himself] out as having
authority or by a principal's actions which lack such ordinary care as to clothe an
agent with the indicia of authority, thus leading a reasonably prudent person to
believe that the agent has the authority [he] purports to exercise.


Baptist Mem'l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 949 (Tex. 1998). A principal's full
knowledge of all material facts is essential to establish a claim of apparent authority based on
estoppel. Gaines v. Kelly, 235 S.W.3d 179, 182 (Tex. 2007) (citing Rourke v. Garza, 530 S.W.2d
794, 803 (Tex. 1975)). In making the determination of the extent of the principal's knowledge of all
material facts, only the conduct of the principal is relevant. Id. Therefore, in order to find apparent
authority, we examine the conduct of the principal, reliance by the party alleging apparent authority,
and the reasonableness of the third party's assumptions regarding authority. Id. at 182-83.

 a. HHFI's Conduct

 In order to find that ETEX and/or Marshall had the apparent authority to act on behalf of
HHFI, we must examine the conduct of HHFI and determine the extent of HHFI's knowledge of all
material facts. 

 Nears argues that because HHFI hired Daniel Foster to act as the quality operations
representative to oversee the hotel, coupled with the fact that Nears had contact with Foster, those
things create sufficient evidence to raise a fact issue as to HHFI's conduct in extending its apparent
authority to ETEX and/or Marshall. 

 The evidence in this regard demonstrates that Foster, at the direction of HHFI, performed a
product management/quality operations fire safety review report on June 17, 1999, at the hotel. 
Items of evaluation included hotel cleanliness, hotel conditions, and life safety and brand integrity
standards. The results of this report would provide HHFI with certain information about the hotel,
as described in the categories enumerated above. Notably, these categories did not include
evaluation of the professionalism or conduct of the hotel management in relation to the employees
of the hotel. 

 There is no evidence that HHFI was made aware of the "material facts" which are the basis
of Nears's lawsuit (i.e., Marshall's alleged outrageous and overbearing conduct toward Nears). The
evidence upon which Nears relies in this regard does not touch upon the authority of ETEX and/or
Marshall to act on its behalf.

 b. Nears's Reasonable Reliance

 In order to establish reliance, Nears points to her contact with Foster. Nears testified in her
deposition that the only person at HHFI with whom she had contact was Foster. Nears knew that
Foster was with HHFI and that he inspected the different facilities. 

 Nears further testified that she received a check from HHFI. The check was given as a bonus
to Nears as part of a marketing strategy to enlist members in the priority club. 

 Nears contends that the receipt of money directly from HHFI is conduct which indicates there
was an apparent authority relationship of it with ETEX and Marshall because Nears received
compensation from both entities. This evidence, together with evidence that HHFI managed the
intricacies of some of the hotel's activities, a job that ETEX and Marshall were also responsible for,
Nears contends, would lead a reasonable person to believe that ETEX and Marshall were agents of
HHFI.

 We disagree. Evidence that HHFI sent Foster to perform an inspection on one occasion does
not equate to management of the intricacies of the hotel's activities. Moreover, Nears's receipt of one
bonus check for participating in a marketing strategy for HHFI's priority club is not evidence of
apparent authority on the part of ETEX and Marshall.

 In Ames, 672 S.W.2d at 450, the Texas Supreme Court held that there was no evidence of
apparent authority. In Ames, the plaintiff had two bank accounts, one styled "Nancy Ames Riviere"
and one styled "Nancy Ames Productions." Ames's bookkeeper handled numerous banking
transactions for her and had authority to sign checks on the Nancy Ames Productions account. Id.
at 448. When Ames had a certificate of deposit mature, she authorized her bookkeeper to "rollover"
the certificate into another one that was payable to "Nancy Ames Riviere." When Ames was out of
town, the bookkeeper cashed the certificate of deposit (a certificate that required Ames's
endorsement). The certificate was not endorsed by Ames and Ames did not authorize the
transaction.

 In Ames's lawsuit against the bank, the bank relied on the bookkeeper's apparent authority
to act on Ames's behalf in financial matters. The evidence revealed that the bookkeeper handled
many banking transactions for Nancy Ames Productions and that she had been ceded the authority
to sign checks drawn on the corporation's checking account. In contrast, only Ames was authorized
to make withdrawals from her personal account. The bookkeeper had acted on behalf of Ames
(personally) on only one prior occasion. The Texas Supreme Court, therefore, held that there was
no evidence of a pattern of conduct by Ames that would have led the bank, acting as a reasonably
prudent person, to believe that the bookkeeper had authority to deal with Ames's personal account. 
Id. at 450. 

 In the case before us, the evidence of apparent authority is much less. As in Ames, there is
no evidence which would lead a reasonably prudent person to conclude that HHFI had any control
or right to control Marshall's conduct in any manner, including the offensive conduct at issue. Nears
does no more than create a mere surmise or suspicion of the alleged agency relationship, one which
does not rise to more than a scintilla of evidence that HHFI knowingly or negligently permitted
ETEX and/or Marshall to hold themselves out as having authority to act on HHFI's behalf or that
HHFI's actions lacked such ordinary care as to clothe ETEX and/or Marshall with any indicia of
HHFI's authority. 

 2. There is no genuine issue of material fact regarding the actual authority
of ETEX and Marshall to act as agents of HHFI.


 Actual authority, which includes both express and implied authority, generally denotes
authority that a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent
to believe that he possesses, or (3) allows the agent to believe that he possesses by want of due care
the authority to act on behalf of the principal. Suarez v. Jordan, 35 S.W.3d 268, 273 (Tex.
App.--Houston [14th Dist.] 2000, no pet.); Spring Garden 76U, Inc. v. Stewart Title Co., 874
S.W.2d 945, 948 (Tex. App.--Houston [1st Dist.] 1994, no writ). Express authority is delegated to
an agent by words that expressly and directly authorize the agent to do an act or series of acts on
behalf of the principal. Crooks v. M1 Real Estate Partners, Ltd., 238 S.W.3d 474 (Tex.
App.--Dallas 2007, pet. denied). Implied authority is the authority to do whatever is reasonably
necessary and proper to carry out the agent's express powers. Spring Garden 79U, 874 S.W.2d at
948. An agent who does not have express authority does not have implied authority. Crooks, 238
S.W.3d at 483 (citing Sociedad De Solaridad Soc. "El Estillero" v. J. S. McManus Produce Co., 964
S.W.2d 332, 334 (Tex. App.--Corpus Christi 1998, no pet.)).  This is so because implied authority
is authority which is proper, usual, and necessary to the exercise of the authority the principal
expressly delegates. Behring Int'l, Inc. v. Greater Houston Bank, 662 S.W.2d 642, 649 (Tex.
App.--Houston [1st Dist.] 1983, writ dism'd).

 Concerning actual authority, Nears argues that HHFI exercised sufficient specific control
over conduct of ETEX and/or Marshall concerning employees of the hotel to establish an agency
relationship by actual authority. In support of this contention, Nears relies on the standards manual
promulgated by Holiday Inn Worldwide for all Holiday Inn owners, licensees, and general managers
to follow. The manual required all general managers (the position held by Marshall at the Mount
Pleasant Holiday Inn hotel), to be certified through the Holiday Inn Worldwide Property Executive
Training Program. The general manager was supposed to be required to attend the annual Holiday
Inn Worldwide Conference for management training, and the evidence shows that the management
training is supposed to be completed by the general manager within 180 days of assuming the
position. However, although Nears has shown that Marshall was supposedly required to attend this
particular program, there is no evidence as to what this specific training was intended to entail. The
evidence further shows that Marshall never attended this program. Likewise, the Holiday Inn
Worldwide standards manual is shown to contain minimum training requirements for the guest
services manager, but there is no evidence regarding what this specific training was intended to
entail. (8)
 

 Nears contends that HHFI's control of the Mount Pleasant hotel is further evidenced by
quarterly unannounced property inspections. These inspections related to housekeeping, front office
procedures, guest comments, food and beverage, cleanliness, maintenance issues, life safety factors,
and the condition of the exterior of the property. Based upon these inspections, the hotel was given
an overall score. The evidence shows that the general manager prior to Marshall was dismissed by
ETEX after receiving low scores on the quarterly inspections conducted by HHFI. Nears argues that
the activity of conducting quarterly inspections, the fact that guests' comment cards were sent directly
to HHFI, and the dismissal of Marshall's predecessor as general manager due to low inspection
scores create more than a scintilla of evidence that ETEX was HHFI's agent. 

 The basis of Nears's claims is the manner in which Marshall and ETEX conducted
themselves as her employment superiors, including the competence of their management skills. 
Nears argues that because Marshall and ETEX received training from HHFI regarding the
management of the hotel, together with the other factors listed above, there exists a genuine issue
of material fact as to whether HHFI should be liable for the actions of ETEX and Marshall. (9)

 The inspections, guest comment cards, and training requirements are geared toward ensuring
guest satisfaction, not toward the treatment of hotel employees. (10) Standards are established by HHFI
and presumably enforced for the purpose of enhancing customer satisfaction. Quality control
standards for operating a franchise should not be construed to create an agency relationship. See
Smith v. Foodmaker, Inc., 928 S.W.2d 683 (Tex. App.--Fort Worth 1996, no writ). The
implementation of standards to ensure guest satisfaction in this case does not evidence express or
implied actual authority flowing from HHFI to ETEX or Marshall pertaining to the treatment of hotel
employees. As stated in the commentary from the Restatement of Agency: "[S]etting standards in
an agreement for acceptable service quality does not of itself create a right of control." 
Restatement (Third) of Agency § 1.01 cmt. f (2006).

 The evidence here simply does not reveal a genuine issue of material fact on the issue of
whether HHFI had the right to control the acts giving rise to the lawsuit, i.e., Marshall's supervisory
interactions with Nears. There is no evidence that HHFI had the right to control or, in fact, did
control Marshall's day-to-day supervisory interactions with Nears. To impose vicarious liability,
there must be evidence that such control was exercised. Ely v. Gen. Motors Co., 927 S.W.2d 774,
778-79 (Tex. App.--Texarkana 1996, writ denied) (affirming summary judgment for GMC because
plaintiff presented no evidence that GMC possessed the right to control the act resulting in the
lawsuit).

 In this case, HHFI introduced evidence that:


 HHFI had no ownership interest in or financial control over the hotel and provided
no funds for operating expenses, managers' salaries, or for any other purpose;

 There is no comingling of funds or sharing in profits or losses between HHFI and the
Mount Pleasant hotel;

 HHFI was not involved in any decision with respect to the terms and conditions of
employment for workers at the hotel; 

 HHFI did not have authority to hire or fire workers at the hotel;
 HHFI did not pay any compensation to workers at the hotel, and paid no employment
taxes on its behalf;

 While she worked at the Mount Pleasant hotel, Nears did not report to anybody at
HHFI; and


 


 Nears received her paycheck from ETEX while employed as guest services manager
at the hotel. (Nears was previously directly employed by Holiday Inn, the limited
partnership that owns the hotel, when she worked at the front desk.)



 Taking this evidence into account and given that Nears failed to produce any evidence that
HHFI (11) either did control or had the right to control Marshall's supervisory interactions with Nears,
there is no genuine issue of material fact on the issue of whether HHFI expressly or impliedly
delegated authority to ETEX and/or Marshall to manage the hotel in such a manner as to control the
supervisory interactions with Nears in this case. 

 Because the evidence of the allegations does not rise to a level that would "enable reasonable
and fair-minded people to differ in their conclusions," (12) we find there to be no genuine issue of
material fact regarding the question of whether ETEX and Marshall had actual or apparent authority
to act as agents of HHFI, we affirm the judgment of the trial court. 



 Bailey C. Moseley

 Justice


Date Submitted: August 20, 2009

Date Decided: September 10, 2009

1. Six Continents Hotels, Inc., was formerly known as Bass Hotel and Franchise Corporation. 
Because Holiday Hospitality Franchise, Inc., and Six Continents Hotels, Inc., basically rely on the
same facts and legal arguments, they will be jointly referred to in this opinion as "HHFI," except
where necessary to distinguish between the two.
2. Nears's claims against Holiday Hospitality Franchising, Inc., and Six Continents Hotels, Inc.,
were never severed and were carried through to the conclusion of the case. On February 11, 2009,
the trial court entered an agreed judgment against ETEX Hotel Management Co., Inc. On April 6,
2009, the trial court heard "Plaintiff's Motion for Determination of Damages on Default Judgment"
against Defendant Jack Marshall. On April 6, 2009, the trial court ordered that all orders and
motions had been disposed of and the case was final and complete as to all plaintiffs and defendants. 
3. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 581-82 (Tex. 2006).
4. The franchisee/franchisor theory of liability is analyzed in Nears's brief on appeal in terms
of duty and breach of duty. This is a markedly different analysis than that of agency based on actual
authority. Nears did raise the issues of actual and apparent authority at the trial court and on appeal.
5. Nears's summary judgment response can be interpreted to broadly assert, in a very vague
manner, a respondeat superior theory of liability: "[G]enerally a master is vicariously liable for the
torts of his servants committed in the course and scope of their employment. Marshall was at all
times acting within the course and scope of his employment when he committed the acts that form
the basis of this suit. Though Marshall's actions may not have been specifically authorized by HHFI
and Bass Hotels, his actions were closely connected with his authorized duties, which is sufficient
to impose liability upon HHFI and Bass Hotels." (Citations omitted.) These allegations do not state
who the supposed "master" was--HHFI or ETEX. Further, the response is wholly lacking
substantive analysis of the respondeat superior theory of liability, and Nears fails to present evidence
of a master/servant relationship between Nears and HHFI.
6. In her response to the motion for summary judgment, Nears contends that HHFI was
negligent in implementing policies relating to employment at the Holiday Inn. Nears does not make
this argument on appeal, and thus, it is not before the Court. Tex. R. App. P. 38.1. Nears hints at
a negligence argument in the context of asserting that HHFI is liable because Marshall and ETEX
were its independent contractors. 
7. Neither the motion for summary judgment filed by Holiday Hospitality Franchising, Inc.,
nor that of Six Continents Hotels, Inc., alleged that Nears's intentional infliction of emotional distress
claim is barred in this case because there is a statutory remedy for Nears for unlawful retaliation.
8. Nears relies heavily on the minimum training requirements in the standards manual. The
initial owner training was a one-time training session, lasting for up to three days. The training of
the general manager and designated department heads and staff was to take place once a year. The
general manager certification was to take place once a year, and the new employee training was to
take place once a year. 

9. Absent from the record is any explanation of how Nears contends that Holiday Inn World
Wide's Standards Manual delegates authority to HHFI. See Tex. R. App. P. 38.1(i) (requiring a brief
to "contain a clear and concise argument for the contentions made, with appropriate citations to
authorities"); Nguyen v. Kosnoski, 93 S.W.3d 186, 188 (Tex. App.--Houston [14th Dist.] 2002, no
pet.) ("An issue not supported by authority is waived.").
10. The standards are described as "a body of clearly defined standards, consistently enforced,
that help ensure the complete satisfaction of our guests each time they stay at a Holiday Inn hotel or
a Holiday Inn Hotel and Suites."
11. There is a total absence of evidence in the record that Six Continents Hotels, Inc., controlled
or had the right to control any of the conduct complained of in this case. Indeed, it appears that Six
Continents Hotels, Inc.'s, sole connection with this case is the fact that it was authorized to issue
license agreements that allow the use of the "Holiday Inn" trade name. Although we do not consider
the issue of franchisor/franchisee liability on appeal because this issue was not raised in Nears's
summary judgment response, we note that the license agreement issued to VI-MTLS (owner of the
Holiday Inn) was issued only by Holiday Hospitality Franchising, Inc., not by Six Continents Hotels,
Inc.
12. Ridgway, 135 S.W.3d at 601.